UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA GARZA,

                    Plaintiff,         Civil Action No. 15-11507
                                      Honorable Stephen J. Murphy, III
                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 15]

Plaintiff Victoria Garza ("Garza") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [13, 15], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Garza is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [15] be DENIED, Garza's Motion for Summary Judgment [13] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

**II.    REPORT**

   **A.    Procedural History**

On January 10, 2013, Garza filed an application for DIB, alleging a disability onset date of November 10, 2010. (Tr. 145-46). This application was denied initially on June 12, 2013. (Tr. 76-79). Garza filed a timely request for an administrative hearing, which was held on August 28, 2014, before ALJ Earl Ashford. (Tr. 43-63). Garza, who was represented by attorney Alice Blackmore, testified at the hearing, as did vocational expert Joseph Thompson. (*Id.*). On October 1, 2014, the ALJ issued a written decision finding that Garza is not disabled under the Act. (Tr. 18-37). On February 25, 2015, the Appeals Council denied review. (Tr. 1-5). Garza timely filed for judicial review of the final decision on April 26, 2015. (Doc. #1).

   **B.    Framework for Disability Determinations**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

2

> the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

  **C.** **Background**

    *1.* *Garza's Reports and Testimony*

At the time of the administrative hearing, Garza was 52 years old, and at 5'3" tall, weighed 122 pounds. (Tr. 47). She lived in a house with her husband. (Tr. 47, 198). She graduated from high school but had no additional education. (Tr. 48). Previously, she was self-employed (performing industrial sewing and then as a sewing supervisor), after which she worked as a flight attendant for Spirit Airlines. (Tr. 48-50).

Garza alleges disability as a result of headaches and neck pain (stemming from thoracic outlet syndrome surgery), fibromyalgia, Sjogren's syndrome, Raynaud's phenomenon, and depression. (Tr. 163). She testified that she stopped working in 2010 because she could no longer perform the duties of her flight attendant position, as a result of the headaches, nausea, and dizziness she was experiencing. (Tr. 50, 163). Garza also testified that Raynaud's causes

her hands to become painful and change colors (due to restricted blood flow), making it difficult for her to lift items or use a pen or pencil well enough to write a letter. (Tr. 50-54).

Garza testified that she can walk half a block, stand for 10-15 minutes at a time, sit for 10-20 minutes at a time, and lift no more than two or three pounds. (Tr. 51-52). She sleeps for three to four hours per night and typically takes several naps during the day. (Tr. 52, 199). Her medications cause headaches, nausea, weakness, sleepiness, and forgetfulness. (Tr. 54).

Garza has a driver's license but, at the time of the hearing, had not driven in "awhile." (Tr. 48, 201). She is able to care for her personal needs, prepare simple meals, shop in stores, and perform some household chores at her own pace. (Tr. 53, 199-201). She has difficulty concentrating and does not handle stress or changes in routine well. (Tr. 55, 204).

    *2. Medical Evidence*

The Court has thoroughly reviewed Garza's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

    *3. Vocational Expert's Testimony*

Joseph Thompson testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 56-62). The ALJ asked the VE to imagine a hypothetical individual of Garza's age, education, and work experience who can perform light work with the following additional limitations: must be allowed to sit or stand alternatively, at will, provided she is not off task for more than ten percent of the work period; no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps or stairs; frequent balancing, stooping, kneeling, crouching, and crawling; frequent use of the bilateral upper extremities for reaching, handling, and fingering; limited to work that involves simple, routine, and repetitive tasks in a work environment free

from fast-paced production requirements, such as moving assembly lines and conveyor belts, involving only simple work-related decisions, with few if any workplace changes. (Tr. 57-59). The VE testified that the hypothetical individual would not be capable of performing Garza's past relevant work. (Tr. 58). However, the VE further testified that the hypothetical individual would be capable of working in the jobs of packer (2,000 jobs in the state of Michigan), assembler (2,000 jobs), and production inspector (2,000 jobs). (Tr. 58-59).

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Garza has not engaged in substantial gainful activity since November 10, 2010 (the alleged onset date). (Tr. 20). At Step Two, the ALJ found that Garza has the severe impairments of Sjogren's syndrome/Sicca syndrome, headaches/migraines, diffuse scleroderma, carpometacarpal joint osteoarthritis, cervical torticollis, De Quervain's tendonitis, generalized anxiety disorder, and unspecified cognitive disorder. (Tr. 20-21). At Step Three, the ALJ found that Garza's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 21-24).

The ALJ then found that Garza retains the residual functional capacity ("RFC") to perform light work with the following additional limitations: must be allowed to sit or stand alternatively, at will, provided she is not off task for more than ten percent of the work period; no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps or stairs; frequent balancing, stooping, kneeling, crouching, and crawling; frequent use of the bilateral upper extremities for reaching, handling, and fingering; limited to work that involves simple, routine, and repetitive tasks in a work environment free from fast-paced production requirements, such as moving assembly lines and conveyor belts, involving only simple work-related decisions, with few if any

workplace changes. (Tr. 24).

At Step Four, the ALJ determined that Garza is unable to perform her past relevant work as an industrial sewer, sewing supervisor, or flight attendant. (Tr. 35). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Garza is capable of performing a significant number of jobs that exist in the national economy. (Tr. 36). As a result, the ALJ concluded that Garza is not disabled under the Act. (*Id.*).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486

F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

   **F.    Analysis**

In her motion for summary judgment, Garza argues, *inter alia*, that the ALJ erred in determining that her impairments do not meet or medically equal Listing 14.10A ("Sjogren's syndrome"). (Doc. #13 at 23-27). In order to meet the requirements of this Listing, Garza, who the ALJ acknowledges suffers from this severe impairment (Tr. 20), must demonstrate:

7

> A.  Involvement of two or more organs/body systems, with:
>
> 1.  One of the organs/body systems involved to at least a moderate level of severity; and
>
> 2.  At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 14.10A.  In evaluating Garza's Sjogren's syndrome against the relevant Listing, the ALJ said only:  "… the claimant does not have involvement of two or more organs/body systems, with:  one of the organs/body systems involved to at least a moderate level of severity; and, at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)."  (Tr. 22).  No further explanation of the way(s) in which Garza apparently fails to meet this Listing was provided.[1]

Courts have recognized that, when considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review."  *Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)).  Failure to provide sufficient articulation of Step Three findings is error.  *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012); *Reynolds*, 424 F. App'x at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2011) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section").  In this case, where the ALJ merely listed the requirements of Listing 14.10A,

---

[1] In the next sentence of his decision, the ALJ concluded that Garza does not satisfy the requirements of Listing 14.10B (which requires repeated manifestations of Sjogren's syndrome, with at least two constitutional symptoms or signs, and at least one of the following at the marked level:  limitation of activities of daily living, limitation in maintaining social functioning, or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace).  (Tr. 22).  Garza does not challenge the ALJ's conclusion in this respect.

with no actual analysis of how Garza's impairments fall short of meeting them, he did not provide an adequate Step Three analysis.

Regardless, however, this Court will not overturn an ALJ's decision if the failure to sufficiently articulate Step Three findings was harmless. *See M.G*, 861 F. Supp. 2d at 859. Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled…." *Id.* at 861 (quoting *Juarez v. Astrue*, 2010 WL 743739, at *5-6 (E.D. Tenn. Mar. 1, 2010)) (internal quotations omitted) (emphasis in original). In cases where the evidence is such that a possibility exists that a Listing is met, remand is appropriate. *See Reynolds*, 424 F. App'x at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"); *see also May v. Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011).

As set forth above, in order to meet the criteria of Listing 14.10A, Garza must show the involvement of two or more organs/body systems (with at least one involved to at least a moderate degree)[2] and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 14.10A. The Commissioner argues that the ALJ's analysis under Listing 14.10A was sufficient because the evidence cited by Garza "does not establish the presence of at least two of the constitutional

---

[2] Garza asserts that the medical evidence demonstrates that at least two of her body systems/organs are affected to at least moderate severity – her skin and musculoskeletal system. (Doc. #13 at 27). The Commissioner appears to concede this is the case (Doc. #15 at 24), and, in fact, there is a significant amount of medical evidence in the record supporting such a conclusion. (*E.g.*, Tr. 260 (myalgia), 271 ("neck pain or headache symptoms are constant"), 360 (diagnoses include neck pain, headache, and post herpetic neuralgia), 385 (bilateral poor perfusion of the forearm and digits), 441 (Dr. Marquardt expresses "concern" about a digital ulcer on Garza's fingertip), 499 ("electrical shock" and soreness sensations in neck with movement)). Thus, the Court will assume – as did the parties – that Garza can satisfy this particular criterion of Listing 14.10A.

symptoms." (Doc. #15 at 24-25). As set forth below, however, because Garza has identified sufficient evidence from which the ALJ could have concluded that she suffers both severe fatigue and malaise, the Court cannot conclude that the ALJ's Step Three analysis was mere harmless error.[3]

The regulations define "severe fatigue" as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 14.00C2. The ALJ did not explicitly evaluate whether Garza experiences fatigue that rises to this level. And, regardless of whether this Court is of the opinion that the evidence establishes (or fails to establish) the presence of "severe fatigue," it is up to the ALJ to make that determination, particularly where there is *some* evidence in the record that Garza suffers from what seems to be an abnormal degree of fatigue. *See, e.g., Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment …."); *Bolla v. Comm'r of Soc. Sec.*, 2012 WL 884820, at *6 (E.D. Mich. Feb. 3, 2012) (citing cases).

At Garza's initial visit to Claudia McQueen, M.D. on January 24, 2011, Dr. McQueen observed that Garza looked "tired and uncomfortable." (Tr. 288). On February 1, 2013, Jie Dong, M.D. noted that Garza's examination was positive for fatigue. (Tr. 293). Similarly, on April 21, 2014, Dr. Dong noted that Garza presented with chills, fatigue, and malaise. (Tr. 461). And, the consultative examiner, Tanvir Iqbal Qureshi, M.D., noted on July 1, 2014, that Garza

---

[3] Additionally, the record at least arguably contains evidence that Garza has suffered involuntary weight loss, as she testified that she recently lost a substantial amount of weight (40 pounds). (Tr. 47). On remand, the ALJ should consider whether there is sufficient evidence in the record of involuntary weight loss (or fever, for that matter) to establish one of these constitutional symptoms as well.

10

suffers from "generalized fatigue,"[4] as well as joint and muscle pain. (Tr. 435-37). In addition, Garza testified that the medications she takes cause her to feel "very tired, weak, sleepy," and, as a result, she takes "several naps" each day, some as long as five hours. (Tr. 52-54). The Commissioner acknowledges that the record contains some evidence of fatigue, but then points to other medical visits at which fatigue was not noted. (Doc. #15 at 25-26). Again, however, it is not for this Court to determine whether the record evidence establishes "severe fatigue," as defined in the regulations; that determination is left to the ALJ. *See, e.g., Clifton*, 79 F.3d at 1009; *Bolla*, 2012 WL 884820, at *6. Given the evidence contained in the record, it is certainly possible that Garza could establish that she suffers from severe fatigue, which results in "significantly reduced physical activity or mental function," as required by Listing 14.10A.

The ALJ's analysis of whether Garza suffers from "malaise" is similarly lacking. Under the regulations, "malaise" is defined as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 14.00C2. The Commissioner argues that malaise is mentioned only twice in the medical record – once in February 2013, when a review of systems was negative for malaise, and again in April 2014, when a review of systems was positive for malaise. (Doc. #15 at 26 (citing Tr. 293, 461)). Thus, the Commissioner contends, "the one isolated mention of this symptom in [Garza's] lengthy treatment record falls short of satisfying the listing." (*Id.* at 26-27).

Fundamentally, the Commissioner's argument implies that one precise word – "malaise"

---

[4] In her motion, the Commissioner acknowledges that Dr. Qureshi noted in the "history" section of his report that Garza's symptoms included "generalized fatigue" (Doc. #15 at 25 (citing Tr. 435), but she then asserts that "a review of systems on the following page denied fatigue" (*Id.* (citing Tr. 436)). This is simply incorrect, as the report indicates, under "Review of Systems," that fatigue was "present." (Tr. 436).

11

must be used repeatedly in a claimant's medical records in order for her to satisfy the relevant Listing. The Commissioner cites no law in support of this proposition, and the Court finds it untenable. Here, the record contains evidence of Garza suffering symptoms that are part and parcel of "malaise," as defined above: ongoing pain, discomfort, and an overall lack of well-being, which at least appear to interfere significantly with Garza's mental and physical activity. For example, in connection with her application for benefits, Garza reported suffering from chronic pain, headaches, joint stiffness, and muscle spasms. (Tr. 163, 198). At the hearing, she testified that she quit her job as a flight attendant because of ongoing headaches, nausea, dizziness, neck pain, and hand pain. (Tr. 50). In terms of medical evidence, Dr. Dong noted on April 10, 2012, that Garza had been suffering from headaches, nausea, and dizziness. (Tr. 286). In May 2012, neurologist Olav Jaren, M.D. noted that Garza was experiencing both headaches and neck pain, with tingling in her hands and legs (associated with Raynaud's phenomenon). (Tr. 271). On February 1, 2013, Dr. Dong noted that Garza had problems with neck pain and headaches, with fatigue, cold intolerance, marked diminished interest or pleasure, joint pain, and muscle weakness.[5] (Tr. 292-94). That same day, Dr. Jaren noted that Garza continued to experience headaches, difficulty turning her head, pain in her shoulder, and tingling in her hands. (Tr. 277). And, at her next visit to Dr. Jaren, Garza reported continuing headaches with confusion, and her husband indicated that "she is in pain every day." (Tr. 487).

On July 9, 2013, Dr. Jaren completed a medical source statement, noting that Garza suffers from neck pain with movement, fatigue, impaired concentration, burning pain in the posterior scalp, and headaches. (Tr. 360-61). He assessed her with neck pain, headaches, and

---

[5] As the Commissioner points out, Dr. Dong noted under "Review of Symptoms" that Garza's examination was negative for malaise. (Doc. #15 at 26 (citing Tr. 293)). Again, however, it is the function of the ALJ – not this Court – to evaluate and weigh the relevant medical evidence.

12

post herpetic neuralgia and stated: "[Garza] has tried to return to work. She has dutifully tried many treatments. Given they have limited effectiveness and that she is unable to tolerate work I support this [disability] application." (Tr. 360-61). Likewise, Dr. Theron Dobson, a neurologist in Dr. Jaren's office, completed a medical source statement in August 2014, indicating that he had reviewed Dr. Jaren's July 2013 opinion and was under the impression that Garza's clinical condition was "modestly WORSE than at that time." (Tr. 535).

In August 2014, Garza's rheumatologist, April Marquardt, M.D. noted that she continued to suffer from muscle and joint pain, as well as right-sided headaches. (Tr. 547-53). Later that month, Dr. Dobson noted that Garza continued to experience headaches, which he described as "chronic and nonprogressive for at least six years." (Tr. 532). And, in a medical source statement dated August 27, 2014, Dr. Marquardt noted that Garza's symptoms include color changes of her fingers and toes, "along with severe pain" and joint pain in her hands. (Tr. 537). In fact, Dr. Marquardt explicitly stated that Garza "suffers from pain that is severe." (*Id.*).

In light of all of this evidence, had the ALJ properly evaluated Garza's impairments in light of Listing 14.10A, it is certainly possible that he could have concluded that Garza suffers from malaise. The Court is not persuaded that Garza must have been diagnosed with "malaise," or explicitly noted to suffer from "malaise," in order to establish that she suffers "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 14.00C2. Rather, the salient question is whether the medical evidence documenting that Garza suffers from ongoing headaches, facial and neck pain, and joint and muscle pain and stiffness is sufficient to conclude that she suffers from malaise. That is a factual question that must be evaluated by the ALJ in the first instance. *See Clifton*, 79 F.3d at 1009.

13

As set forth more fully above, then, there is at least some evidence in the record of fatigue and malaise, as well as a suggestion of significant weight loss which may be involuntary. None of these constitutional symptoms were discussed by the ALJ. And, while the ALJ may well reach the same ultimate conclusion on remand regarding Garza's entitlement to benefits, the Court cannot say that, if the ALJ had conducted a proper Step Three analysis, he necessarily would have found that Garza does not meet or medically equal[6] the relevant Listing. Nor is it the Court's role to make such factual determinations in the first instance. *See Clifton*, 79 F.3d at 1009; *Bolla*, 2012 WL 884820, at *6. In sum, because the Court cannot say that the ALJ's error was harmless, remand is warranted. *See Reynolds*, 424 F. App'x at 416.[7]

## III. CONCLUSION

For foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be DENIED, Garza's Motion for Summary Judgment [13] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be

---

[6] Even if Garza cannot demonstrate that she meets the criteria of Listing 14.10A, she can still satisfy her burden at Step Three by proving that she has an impairment (or combination of impairments) that medically equals this Listing. To do so, she must "present medical evidence that describes how [her] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). This means that Garza must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 874 (6th Cir. 2003) (internal quotations omitted).

[7] Garza raises several other arguments before this Court, including that the ALJ erred in evaluating the medical opinion evidence and in formulating her RFC. (Doc. #13 at 10-23). Because the Court concludes that the ALJ's Step Three analysis is not supported by substantial evidence, however, and recommends that this matter be remanded to the ALJ, it need not address these additional issues. The Court notes, however, that two of Garza's treating physicians – Dr. Dobson and Dr. Jaren – as well as the consultative examiner – Dr. Qureshi – opined that Garza is unable to work. (Tr. 360-61, 425-34, 535). The ALJ gave each of these opinions "limited" or "little to no weight." (Tr. 32-33). Particularly in light of the foregoing analysis, on remand, the ALJ should thoroughly and fairly evaluate all of the medical opinions of record.

REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: January 22, 2016                              s/David R. Grand
Ann Arbor, Michigan                                  DAVID R. GRAND
                                                     United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

15

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 22, 2016.

                                                  s/Eddrey O. Butts
                                                  EDDREY O. BUTTS
                                                  Case Manager